AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| DOMINIC JOHN TADDEO JR. | ) | 6:22-mj -1287 |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 28, 2022__ in the county of __Orange__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 751(a) | Escape. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Cleveland Jenkins, Deputy United States Marshal
Printed name and title

Sworn and subscribed to me as true and accurate by video conference consistent with Fed. R. Crim. P. 4.1 and 4(d)
Date: 04/01/2022

_____
Judge's signature

EMBRY J. KIDD, United Stated Magistrate Judge
Printed name and title

City and state: Orlando, Florida

STATE OF FLORIDA        CASE NO. 6:22-mj- 1287

COUNTY OF ORANGE

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Deputy United States Marshal Cleveland Jenkins, being duly sworn, state the following:

### INTRODUCTION

1. I am a Deputy United States Marshal ("DUSM") for the Middle District of Florida, Orlando Division. I have been a DUSM since 2003. My official duties and responsibilities include Fugitive Apprehension and Enforcement Operations, Judicial Security, Witness Security, Prisoner Operations, and Court Security. My duties involving prisoners and fugitives include the investigation of prisoner escapes pursuant to 18 U.S.C. § 751(a), including those escapes involving the failure of a prisoner to return or remain within the limits of his or her confinement, or to return to an institution or facility, as provided under 18 U.S.C. § 4082(a).

### PURPOSE OF THE AFFIDAVIT

2. This affidavit is being submitted in support of a criminal complaint and arrest warrant charging the defendant, DOMINIC JOHN TADDEO JR. ("TADDEO"), with escape, in violation of 18 U.S.C. § 751(a). As this affidavit is being offered for the limited purpose of establishing probable cause for the charged offense, I have not included all facts and information known to me about this investigation. This affidavit is based on my participation in this investigation as well as information I have received from other law enforcement personnel.

## PROBABLE CAUSE

3. TADDEO was convicted of the following federal offenses in the United States District Court for the Western District of New York:

- in the case captioned *U.S. v. Dominic Taddeo*, Case No. CR.89-59L ("Case 89-59"), TADDEO was convicted of (1) Possession of a firearm not registered in the National Firearms Registration and Transfer Records, in violation of 26 U.S.C. §§ 5861(d) and 5871; and (2) Knowingly possessing firearms which affected interstate commerce while being a felon, in violation of 18 U.S.C. §§ 922(g) and 924. On or about June 29, 1990, TADDEO was sentenced to a term of imprisonment of 8 years in the Bureau of Prisons ("BOP").

- in the case captioned *U.S. v. Dominic Taddeo,* Case No. CR 87-034L-01 ("Case 87-34"), TADDEO was convicted of (1) Conspiracy to purchase firearms, in violation of 18 U.S.C. §§ 1001, 922(m), and 923(g), all in violation of 18 U.S.C. § 371; (2) Making false statements in purchasing firearms, in violation of 18 U.S.C §§ 1001 & 2; and (3) Unlawful receipt of firearms/ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(h) and 924(a). On or about June 29, 1990, TADDEO was sentenced to a total term of imprisonment of 6 years and 3 months in BOP, to run consecutive to the sentence imposed in Case 89-59.

- in the case captioned *U.S. v. Dominic Taddeo*, Case No. CR 91-30L ("Case 91-30"), TADDEO was convicted of (1) conspiracy to possess with intent to distribute and distribute cocaine, in violation of 21 U.S.C. § 846; and (2) engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848 (a) and (c). On or about January 17, 1992, TADDEO was sentenced to a total term of imprisonment of 13 years in BOP, to run consecutive to the sentences imposed in Case 89-59, Case 87-34, and another case.

- in the case captioned *U.S. v. Dominic Taddeo*, Case No. CR 90-117T ("Case 90-117"), TADDEO was convicted of (1) being unlawfully employed by and associated with an enterprise engaged in conduct affecting interstate commerce, in violation of 18 U.S.C. §§ 1962(c) and 1963 and 2; and (2) conspiracy to violate 18 U.S.C. § 1962(c) to unlawfully conduct and participate in affairs of the enterprise which affected interstate commerce, in violation of 18 U.S.C. §§ 1962(d) and 1963. On or about April 15, 1992, TADDEO was sentenced to a total

term of imprisonment of 20 years in BOP, to run consecutive to the sentences imposed in Case 89-59, Case 87-34, Case 91-30, and other cases.

4. After TADDEO had completed a significant portion of his incarceration for the above convictions, and to ease his eventual transition back into society, BOP permitted TADDEO to serve the remainder of his term of imprisonment at a designated residential re-entry center ("RRC"), or "halfway house."

5. Specifically, on February 15, 2022, TADDEO was transferred from the Coleman Correctional Institution ("Coleman") to DISMAS Charities ("DISMAS"), an RRC located at 6860 Edgewater Commerce Parkway, in Orlando, Florida. DISMAS is overseen by the BOP, and is an institution or facility designated by the Attorney General.[1] The inmates residing at DISMAS remain in the custody of the BOP.

6. In connection with his transfer from Coleman to DISMAS, on or about February 15, 2022, TADDEO signed and acknowledged an "Institution Transfer" form, which informed TADDEO that his placement at DISMAS was for 361 days, with a projected release date of February 10, 2023. Thus, as TADDEO knew, he was required by BOP to remain at DISMAS in a "Pre-Release Status"[2] until February 2023. Then, had TADDEO successfully finished the remainder of his term of

---

[1] Pursuant to 18 U.S.C. § 4082(a), "the willful failure of a prisoner to remain within the extended limits of his confinement, or to return within the time prescribed to an institution or facility designated by the Attorney General, shall be deemed an escape from the custody of the Attorney General as provided in chapter 35 of this title." That section further defines "facility" to include a residential community treatment center. DISMAS is a residential community treatment center.

[2] Pre-Release Status means that TADDEO was still in the custody of BOP and had not completed his term of imprisonment.

3

imprisonment at DISMAS, he would have been assigned a United States Probation Officer and would have started his term of supervised release.

7. Upon arrival and as part of placement at DISMAS, all DISMAS residents are required to watch a video and receive a "Resident Handbook" setting forth the rules of the facility. All residents are also required to sign and date a "Resident Intake Packet" in which they acknowledge being made aware of prohibited acts of residents at the facility and agree that the acts have been explained to them. TADDEO watched the video, received a copy of the handbook, and signed the "Residence Intake Packet" upon his arrival to DISMAS on February 15, 2022.

8. As set forth in the materials provided to TADDEO upon his arrival to DISMAS, TADDEO was in the custody of the Attorney General while housed at DISMAS. Additionally, the materials explained that, in the event TADDEO was granted a community pass while residing at DISMAS, he was required to return to DISMAS per the specific requirements of the community pass.[3] A violation of DISMAS rules subjected TADDEO to disciplinary proceedings, including his possible return to a federal prison, among other things.

9. On the afternoon of March 28, 2022, TADDEO was granted a community pass from DISMAS to go to a medical appointment at a medical facility located on North Orange Blossom Trail, Orlando, FL 32810, which is just over two miles from DISMAS. The community pass provided to TADDEO allowed him to

---

[3] A community pass permits a DISMAS resident to leave DISMAS for a limited amount of time, after which the resident is required to return to DISMAS. A community pass specifies where the resident may go, and when the resident must return to DISMAS.

obtain and receive treatment until approximately 5:00 PM that day, which also allowed for travel time. TADDEO was required to return to DISMAS after his medical appointment.

10. However, TADDEO did not return to DISMAS on March 28, 2022 as required. At approximately 5:45 PM that day, staff from DISMAS attempted to contact TADDEO via telephone, but TADDEO did not answer the phone or return the call to DISMAS. DISMAS staff also checked with local jails and hospitals but did not locate TADDEO. As of the date and time of the signing of this affidavit, TADDEO has failed to return to DISMAS, and his whereabouts are unknown.

## CONCLUSION

11. Based on the foregoing, there is probable cause to believe that the defendant, Dominic TADDEO, has committed the offense of escape, in violation of 18 U.S.C. § 751(a).

This concludes my affidavit.

Respectfully submitted,

_____JENKINS_____
Cleveland Jenkins
Deputy United States Marshal

Affidavit submitted by email and attested to me
as true and accurate via telephone or video conference,
consistent with Fed. R. Crim. P. 4.1 and 4(d), before me
this __1__ day of __April__, 2022.

_____
The Honorable Embry J. Kidd
United States Magistrate Judge

6